[No. H005616. Sixth Dist. July 9, 1990.]

BRIAN DRESSER, Plaintiff and Appellant, v.
ROBERT BINDI, Defendant and Respondent.

**COUNSEL**

Tracy N. Tumlin for Plaintiff and Appellant.

Glynn & Harvey and Gregory C. Harvey for Defendant and Respondent.

**OPINION**

**ELIA, J.**—We take this opportunity to add our voice to that of other appellate districts which have concluded that under our Supreme Court's

decision in *Moran* v. *Superior Court* (1983) 35 Cal.3d 229 [197 Cal.Rptr. 546, 673 P.2d 216], a civil plaintiff is required to exercise reasonable diligence in calculating the mandatory dismissal date under Code of Civil Procedure section 583.310,[1] and to request a trial date within that period. Where a civil plaintiff fails, as here, to calculate the deadline, or to request a trial date within the time remaining, we conclude this duty has not been met. In consequence, we affirm the order of dismissal.

## PROCEDURAL HISTORY

Appellant Brian Dresser filed a complaint against respondent Robert Bindi, M.D., on June 14, 1983. Since the facts underlying this complaint are irrelevant to the resolution of the issue on appeal, we need not detail them. The case was ordered to arbitration on April 30, 1987. In February 1988, appellant's counsel asked respondent's counsel for an extension of the five-year deadline. Respondent's counsel promptly responded that he was not authorized to stipulate to an extension.

On March 4, 1988, the arbitrator issued an award in favor of respondent. On March 18, 1988, appellant served respondent with a request for a trial de novo. This request was filed on March 23, 1988.

In May 1988, appellant filed a substitution of attorneys and proceeded in propria persona.

On June 14, 1988, a status conference on the case was continued to September 13, 1988.

On August 24, attorney Tumlin was substituted in as counsel for appellant. Respondent's counsel, Attorney Glynn, then telephoned Tumlin to advise him that the five-year dismissal deadline was approaching and that he was not authorized to waive it.

On September 18, 1988, in a letter to respondent's counsel, appellant's counsel stated his position that, under section 1141.20 and *Moran* v. *Superior Court, supra,* 35 Cal.3d 229, the five-year deadline was tolled until the date set for a trial de novo.

At the scheduled status conference on September 13, despite admonitions from respondent's counsel that the five-year deadline was imminent, appellant's counsel again argued that under *Moran*, the five years would not expire until the new trial date. The trial court asked appellant if he was

---

[1] All further references are to the Code of Civil Procedure unless otherwise noted.

willing to take the chance that the statute would run before the new trial date. In response, appellant's counsel indicated his belief that the time between the request for a trial de novo and the date set for this trial was tolled. He then acquiesced to a trial date of January 3, 1989.

On October 25, 1988, respondent filed a motion to dismiss, pursuant to section 583.360.

The trial court "reluctantly granted" the motion on November 14, 1988. Appellant's motion for reconsideration was denied on February 21, 1989. This appeal ensued.

### DISCUSSION

Section 583.310 provides that "[a]n action shall be brought to trial within five years after the action is commenced against the defendant." Section 583.360 states: "An action shall be dismissed by the court on its own motion or on motion of the defendant, after notice to the parties, if the action is not brought to trial within the time prescribed in this article."

Section 1141.20, which addresses requests for trial de novo after arbitration, provides: "Any party may elect to have a de novo trial, by court or jury, both as to law and facts. Such trial shall be calendared, insofar as possible, so that the trial shall be given the same place on the active list as it had prior to arbitration, or shall receive civil priority on the next setting calendar." Section 1141.17 makes it clear, however, that the statute of limitations is not tolled when a case is sent to arbitration, unless the action is or remains submitted to arbitration within six months of the expiration of this statutory period.

This case, which was still in arbitration on December 14, 1987, four years and six months after the date the action was filed, falls within this statutory exception. In such a case, "the time beginning on the date four years and six months after the plaintiff has filed the action and ending on the date on which a request for a de novo trial is filed under Section 1141.20 shall not be included in computing the five-year period specified in Section 583.310." (§ 1141.17, subd. (b).) The request for a trial de novo was filed in this case on March 23, 1988. Under section 1141.17, therefore, the five-year deadline would have expired on September 23, 1988.

█ Appellant argues that under section 1141.20 and *Moran* v. *Superior Court*, *supra*, 35 Cal.3d 229, the time between the filing of the arbitration award and the date set by the court for a de novo trial is excluded in calculating the five-year deadline imposed by section 583.360. He also

contends his duty of due diligence, under *Moran*, is discharged once he makes a request for a trial de novo, and that it is then the duty of the trial court, sua sponte, to set the case for trial.

In *Moran* v. *Superior Court, supra*, 35 Cal.3d 229, the trial court ordered an action to arbitration 41 days before the expiration of the 5-year deadline. After an arbitration award was filed, the defendant requested a trial de novo. With 24 days remaining before the 5 years expired, plaintiff's attorneys contacted the clerk's office, requesting the case be reset for trial and given the same position on the trial calendar it had enjoyed prior to being referred to arbitration. (*Id.* at p. 236.) The court clerk assured plaintiff's counsel that the case would be reset within the five-year limit. Despite the fact that follow-up calls by counsel were met with similar assurances, the clerk's office sent the case file to the basement for storage, and the five-year deadline expired. (*Ibid.*)

The trial court rejected Moran's request to dismiss the case. The Supreme Court affirmed on two independent grounds: First, because plaintiff had exercised "reasonable diligence" in prosecuting her case, thereby warranting application of the impossibility exception which courts had implied to former section 583, subdivision (b); second, under former section 1141.20 (now § 1141.20, subd. (b)), because a trial court has a sua sponte duty to recalendar a postarbitration case for trial, giving it the same priority it had before arbitration.

There is a split of authority in the Court of Appeal—primarily among the divisions of the Second District—on the issue of whether this second alternative holding encompasses a duty of reasonable diligence by a plaintiff to expedite prosecution of his or her case after arbitration. As the court in *Santa Monica Hospital Medical Center* v. *Superior Court* (1988) 203 Cal.App.3d 1026, 1031-1033 [250 Cal.Rptr. 384] explained: "One line of cases, essentially all decided by Division Seven of [the Second District], views *Moran* as intending to effect an automatic and unconditional postarbitration tolling period extending to whatever trial date the court sets. This view is based on the observation that *Moran* does not explicitly refer to plaintiff's reasonable diligence when discussing its second alternative ground for its decision. It is also based upon *Moran*'s characterization of former section 1141.20 as placing a 'sua sponte' duty upon the trial court to 'recalendar' a trial date that preserves plaintiff's position relative to the five-year statute. These cases conclude that plaintiffs have no duty of reasonable diligence to notify the trial court of an imminent five-year deadline to trigger the tolling rule. [Citations.] [¶] The second line of cases, all but one from other divisions of [the Second District], hold that *Moran* must be read in light of its facts. Accordingly, *Moran* contemplated a limited duty of

reasonable diligence as prerequisite to postarbitration tolling because the *Moran* plaintiff promptly notified the trial court of the five-year problem and put the court to its statutory duty to calendar trial accordingly. The contrary conclusion would result in cases lingering for indefinite periods, despite the maximum six-month extension of the five-year period under section 1141.17, subdivision (b), until the trial court independently set a trial date. [Citations.]"

Like the court in *Santa Monica Hospital*, we find this second line of cases more persuasive, and adopt the interpretation of *Moran* it espouses. Accordingly, we hold that although a plaintiff is entitled to presume a trial court will perform its duty to set a preferential trial date following a request for a trial de novo, he or she must nonetheless diligently perform his or her independent duty "to at all times keep track of the five-year deadline and inform the trial court of that deadline." (203 Cal.App.3d at p. 1034; accord *Baccus* v. *Superior Court* (1989) 207 Cal.App.3d 1526, 1536 [255 Cal.Rptr. 781].)

Appellant contends, however, that the Legislature's failure to amend section 1141.20 following *Moran* indicates its approval of *Moran*'s interpretation of this statute. We agree with the *Santa Monica* court, however, that subsequent amendments to section 1141.17 abrogated any construction of *Moran* under which the five-year deadline would be tolled until the trial date.

Under former section 1141.17, as the *Santa Monica* court pointed out, plaintiffs were given only the time which would have remained had the case not been assigned to arbitration. "Thus, cases coming out of arbitration generally faced imminent five-year deadlines." (*Santa Monica Hospital Medical Center* v. *Superior Court, supra*, 203 Cal.App.3d at p. 1034.) The Legislature amended section 1141.17 in 1983 (Stats. 1983, ch. 123, § 3) to allow a six-month period to bring the case to trial following arbitration. In 1984, section 1141.17 was amended again to add a reference to section 583.310 (which requires an action to be brought to trial within five years after it is commenced) to subdivision (b).

The context of this latter revision supports our interpretation of the statute. In 1978, the Legislature authorized the California Law Revision Commission to study the possibility of revising the law relating to involuntary dismissal for lack of prosecution. (Stats. 1978, Res. ch. 65.) The commission's proposal was submitted to the Legislature and the Governor on 'June 2, 1983. (17 Cal. Law Revision Com. Rep. (1984) 905, 907.) In its "Revised Recommendation relating to Dismissal for Lack of Prosecution" the commission reviews the history of former sections 581a and 583.

This recommendation notes that the "attitude of the courts and the Legislature" towards dismissal for lack of prosecution has varied considerably since the statute's first enactment. Between about 1900 and 1920 "the dismissal statutes were strictly enforced. Between the 1920's and the 1960's there was a process of liberalization of the statutes to create exceptions and excuses. Beginning in the late 1960's the courts were strict in requiring dismissal. In 1969 an effort was made in the Legislature to curb discretionary court dismissals, but ended in authority for the Judicial Council to provide a procedure for dismissal. In 1970 the courts brought an abrupt halt to strict construction of dismissal statutes and began an era of liberal allowance of excuses that continues to this day." (17 Cal. Law Revision Com. Rep., *supra*, at pp. 910-911.)

Concurrent with its recommendations, the commission submitted proposed legislation in an effort to codify state policy on this subject.

The commission report went on to note the particular problem of tolling provisions on the effect of former section 583: "The problem arises when, within the last months before the five-year period is about to expire, an event occurs that suspends the running of the statute . . . . [It] may be suspended for a time under these circumstances, but when the tolling or extension ends and the statute begins to run again, the plaintiff has only a short time to bring the action to trial. In many cases this is an unrealistic or impossible deadline to meet. [¶] Legislation enacted in 1983 addresses this problem specifically where suspension of the dismissal statute is a result of submission of the action to judicial arbitration. Under this legislation, if judicial arbitration is pending at any time during the last six months of the five-year period, the plaintiff is allowed six months after a trial de novo is requested to bring the case to trial. The six-month extension is proper, and the proposed law broadens this provision to allow six months to bring the action to trial where there has been suspension of the five-year statute for any reason within the last six months of the five-year period." (17 Cal. Law Revision Com. Rep., *supra*, at p. 913.)

These comments were drafted and submitted six months before the Supreme Court decided *Moran* in December 1983.

Senate Bill No. 1366, the commission's proposed legislation, was introduced in January 1984. On August 30, 1984, before final passage of this bill and eight months after *Moran* was decided, a "Communication of Law Revision Commission Concerning Senate Bill 1366" was published in the Assembly Journal. The comment to amended section 1141.17 which appears in this communication states that that section, as amended, would "supersede[] the rule stated in *Moran v. Superior Court*, 35 Cal.3d 229, 673

P.2d 216, 197 Cal. Rptr. 546 (1983), that the time between the date the arbitration award is filed and the date set for the trial de novo is to be excluded from the calculation of the five-year dismissal period." This comment was adopted as the "Legislative Committee Comment—Assembly," and accompanies the text of amended section 1141.17 in West's Annotated California Codes [Deering's Annotated Code of Civil Procedure section 1141.17 (1990 pocket supp.) page 12].

We read this history as evidence of the Legislature's intent to clarify the effect of tolling provisions on the operation of section 583.310, and specifically to supersede language in *Moran* that the five-year mandatory dismissal period is tolled until the date set for a trial de novo. We believe the Legislature intended amended section 1141.17 to detail the time computation involved where a case remains in arbitration with less than six months of the five years left to run, and intended section 1141.20 to allow such a case priority on the setting calendar when a request for a de novo trial is made. We are confident this reading of the statutes is consistent with the policy behind the mandatory five-year dismissal statute.

Appellant argues, however, that his reliance on *Moran* and on appellate cases interpretating its language narrowly was reasonable, and that to affirm the dismissal in this case on that basis would be manifestly unjust. We disagree.

The record unequivocally establishes that appellant's counsel was informed on more than one occasion that the five-year deadline was imminent. Despite these admonitions, he continued to adhere to his position that the five-year deadline was tolled under *Moran* until whatever trial date the court set. His insistence on the correctness of his position persisted even after he was warned by the court that his acquiescence to a January 1989 trial date involved the chance that it would fall outside the deadline.

Counsel's complete failure to calculate the deadline under section 1141.17, his failure to request a trial date within the time remaining, and his acquiescence to a trial date more than three months after the deadline expired—all despite repeated reminders from opposing counsel and warnings from the court—persuade us that appellant did not meet his duty of due diligence in this case. The plaintiff in *Moran*, unlike appellant, calculated the expiration date under section 1141.17, informed the court of this deadline, and made every reasonable effort to ensure that a trial date within this deadline would be set. Appellant did none of these things. Accordingly, he has not met the standard of reasonable diligence to which plaintiffs are held under *Moran*.

The trial court's order of dismissal is affirmed.

Premo, Acting P. J., and Cottle, J., concurred.

A petition for a rehearing was denied July 31, 1990, and appellant's petition for review by the Supreme Court was denied September 19, 1990. Mosk, J., was of the opinion that the petition should be granted.